893 F.2d 641
 65 A.F.T.R.2d 90-717, 90-1 USTC P 50,025
 BUSINESS VENTURES INTERNATIONAL, Appellant-Cross Appellee No. 88-3872,
v.
Anthony P. OLIVE, Director of Virgin Islands Bureau of
Internal Revenue, and Government of the Virgin
Islands, Appellees-Cross Appellants No. 89-3012.
 Nos. 88-3872, 89-3012.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 6, 1989.
Decided Jan. 12, 1990.
 
 Gustav A. Danielson (argued), Charlotte Amalie, St. Thomas U.S. Virgin Islands, for appellant-cross appellee.
 Godfrey R. de Castro, Atty. Gen., Rosalie Simmonds Ballentine, Sol. Gen., Joanne E. Bozzuto (argued), Asst. Atty. Gen. (Tax), Government of the Virgin Islands, Dept. of Justice, St. Thomas, V.I., for appellees-cross appellants.
 Before: GIBBONS, Chief Judge, and MANSMANN and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 Business Ventures International, Inc. (the taxpayer) appeals from a judgment of the District Court for the Virgin Islands affirming in part deficiency notices issued by the Virgin Islands Bureau of Internal Revenue for the taxpayer's tax years ending November 30, 1982 and November 30, 1983. The Bureau of Internal Revenue cross appeals from the same judgment with respect to certain penalties which it assessed but which the district court disallowed. We will affirm in part and reverse in part.
 
 I.
 
 2
 The taxpayer was incorporated in Delaware on October 5, 1981, and shortly thereafter qualified as a Virgin Islands inhabitant foreign corporation. On November 30, 1981 the taxpayer's shareholders transferred to it a 64 unit apartment building located in North Dakota in exchange for the taxpayer's only issued stock. On December 1, 1981 the taxpayer sold the apartment building by a contract of sale which provided for payments over a five year period. The sale price was $975,000. The taxpayer had a carry-over basis of $234,416, under sections 351 and 358 of the Internal Revenue Code, 26 U.S.C.A. Secs. 351-358 (West 1978 & Supp.1988). Thus the taxpayer had a gain of $740,584.
 
 
 3
 The taxpayer filed with the Bureau of Internal Revenue income tax returns for the fiscal years ending November 30, 1982 and November 30, 1983. It had established a local business in the Virgin Islands, and on its forms 1120F it listed as income only income whose source was the Virgin Islands. For the year ending November 30, 1982 it disclosed on Schedule M-1 $807,377 as "foreign income" on which it paid no taxes. This sum included the $740,584 gain on the sale of the apartment building. For the year ending November 30, 1983 it listed on Schedule M-1 as "foreign income" the sum of $106,930. Schedule M-1 is a schedule of "Reconciliation of Income Per Books With Income Per Return."On June 27, 1986 the Bureau of Internal Revenue issued a statutory notice of deficiency with respect to the taxpayer's income tax liability for the two years in issue. The Bureau of Internal Revenue asserted that the taxpayer should have paid tax to the Virgin Islands both on income whose source was there and on income whose source was elsewhere. On July 21, 1986 the taxpayer filed in the District Court for the Virgin Islands a Petition for Redetermination of Income Tax Liability for both years, in which it contended that as a Virgin Islands inhabitant foreign corporation it was not liable to the Virgin Islands for income tax on income unconnected with activities there. The Petition for Redetermination was stayed pending resolution in this court of the appeal in Danbury, Inc. v. Olive, 820 F.2d 618 (3d Cir.) cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987) (Danbury ).
 
 
 4
 In Danbury this court held that prior to the enactment of section 1275(b) of the Tax Reform Act of 1986, 26 U.S.C.A. Sec. 7651(5)(B) (West 1989), Virgin Islands inhabitant foreign corporations were required to pay to the Virgin Islands income tax both on Virgin Islands source income under the "mirrored" tax code applicable to such income and on outside income under the non-mirrored Internal Revenue Code. Thus Danbury rejected the taxpayer's theory of tax liability. After the Danbury decision the taxpayer filed an amended Petition for Redetermination, claiming: (1) that the district court had no jurisdiction "to hear a petition for redetermination of United States tax liability;" and (2) that the Bureau of Internal Revenue lacked authority "to issue deficiency notices with respect to United States income taxes." At trial the taxpayer contended that the income from the sale of the apartment building should be treated as a long term capital gain; that the income tax should be paid on an installment basis; and that none of the penalties assessed by the Bureau of Internal Revenue were proper. Implicitly rejecting the taxpayer's jurisdictional challenge to its authority and that of the Bureau of Internal Revenue, the district court held: (1) that the income on the sale of the apartment building was not eligible for long term capital gain treatment; (2) that the taxpayer had not elected out of having that gain taxed as an installment sale; (3) that the negligence penalty imposed by the Bureau of Internal Revenue would be disallowed; and (4) that a late filing penalty for the year ending November 30, 1982 would be allowed, but a similar penalty for the year ending November 30, 1983 would be disallowed. This appeal and cross-appeal followed.
 
 II.
 
 5
 The taxpayer contends that Danbury was erroneously decided, but recognizes that a panel of this court may not disregard that precedent. Alternatively the taxpayer contends that the challenges which it makes to the jurisdiction of the district court and to the authority of the Bureau of Internal Revenue over United States Income Tax Liability were not addressed by the Danbury panel, and thus may be considered by this panel. But while the Danbury opinion did not specifically deal with the authority of the Bureau of Internal Revenue to assess taxes on the income of Virgin Islands inhabitant foreign corporations from non-Virgin Islands sources, and did not specifically deal with the jurisdiction of the district court to redetermine deficiencies in such income tax, both questions were necessarily decided. The linguistic niceties on which the taxpayer relies to conduct its argument that the several interrelated statutes preclude assessment of the taxes in issue by the Virgin Islands all are based on the assumption that a tax on non-Virgin Islands income is a United States income tax and not a Virgin Islands income tax. The Danbury court held otherwise. That decision necessarily held that, prior to the Tax Reform Act of 1986, income tax owed by a Virgin Islands inhabitant foreign corporation on its non-Virgin Islands income fell within 48 U.S.C.A. Sec. 1612(a) (1987); and within 33 V.I.Code Ann. tit. 33, Sec. 942 (1967 & Supp.1989). See Danbury, 820 F.2d at 623, 626.III.
 
 
 6
 The Tax Reform Act of 1986, however, changed the law with respect to the liability of Virgin Islands inhabitants for income tax on non-Virgin Islands source income. While the amount of tax owed by a corporation such as the taxpayer was not changed, the place of filing and payment was. Under the Tax Reform Act two returns are filed, one covering Virgin Islands source income with the Bureau of Internal Revenue, and one covering other source income with the Internal Revenue Service. Tax Reform Act of 1986, Pub.L. No. 99-514, Sec. 1275(b), 100 Stat. 2598 (1986), codified at 26 U.S.C.A. Sec. 7651(5)(B) (West.1988); Danbury, 820 F.2d at 625-26. The amendment applies to "(i) any taxable year beginning after December 31, 1986, and (ii) any pre-1987 open year." Tax Reform Act of 1986, Pub.L. No. 99-514, Sec. 1277(c)(2)(A), reprinted as note after 26 U.S.C.A. Sec. 931 (West 1988). "[T]he term 'pre-1987 open year' means any taxable year beginning before January 1, 1987, if on the date of the enactment of this Act [Oct. 22, 1986] the assessment of a deficiency of income tax for such taxable year is not barred by any law or rule of law." Id. at Sec. 1277(c)(2)(C). The purpose of section 1277(c)(2) is to permit the United States rather than the Virgin Islands to collect the tax on non-Virgin Islands source income for all pre-1987 years on which collection was not time barred. Danbury, 820 F.2d 626.
 
 
 7
 The taxpayer's return for the year ending November 30, 1982 was filed on July 18, 1983. The statute of limitations in 26 U.S.C.A. Sec. 6501(a) expired on July 18, 1986. 26 U.S.C.A. Sec. 6501(a) (West 1989). Thus 1982 was not a pre-1987 open year since on October 22, 1986 assessment of a deficiency by the United States was time barred. For the year ending November 30, 1983, however, the taxpayer's return was filed on March 15, 1984, and the section 6501(a) statute of limitations did not expire until March 15, 1987. Thus 1983 is a pre-1987 open year under the Tax Reform Act, for which only the United States, not the Virgin Islands, can assess a deficiency.
 
 
 8
 The Bureau of Internal Revenue urges, nevertheless, that because it issued a notice of deficiency for 1983 prior to October 22, 1986, it and not the Internal Revenue Service may assess and collect the non-Virgin Islands source tax for that year. The Bureau of Internal Revenue points to nothing in the Tax Reform Act of 1986 suggesting that Congress intended this result. Rather, it relies on 26 U.S.C.A. Sec. 6213(a), which provides that no levy or proceeding in court to collect can proceed until 90 or 150 days after a notice of deficiency is sent. 26 U.S.C.A. Secs. 6212, 6213(a) (West 1989). It would have us read the definition of a pre-1987 open year in section 1277(c)(2) as if it somehow incorporated the prohibition against levy or collection, thus prohibiting the United States from making an assessment unless a deficiency notice was sent 90 or 150 days prior to October 22, 1987. This would be an utterly strained reading of the rather unambiguous language in section 1277(c)(2), and we reject it. Thus the district court should have disallowed the assessment by the Bureau of Internal Revenue of tax on non-Virgin Islands source income for the fiscal year ending November 30, 1983. Our holding as to the effect of the Tax Reform Act of 1986 on that fiscal year applies as well to assessments of penalties under 26 U.S.C. Sec. 6651 and Sec. 6661.
 
 IV.
 
 9
 Because the Virgin Islands could assess a deficiency for the year ending November 30, 1982, we must consider whether the district court correctly determined the long term capital gain and the installment sale issues.
 
 A.
 
 10
 As noted above, the Bureau of Internal Revenue and the district court treated the taxpayer's gain on the sale of the North Dakota apartment building as ordinary income rather than long term capital gain. The taxpayer contends that, because the shareholders who transferred the building to it acquired it as far back as 1968 and used it in trade or business, the district court erred. The district court's discussion of the issue is as follows:
 
 Findings of Fact
 
 11
 The [taxpayer] was created for the express purpose of consummating the already agreed-upon sale of the apartment building. That sale was completed less than a day after the transfer from the tenants-in-common to the petitioner.
 
 
 12
 From the testimony of Mr. Mack, one of the principal shareholders in the petitioner, and a former tenant-in-common owner of the property, we find:
 
 
 13
 (1) That the apartment building is excluded from the definition of "capital asset" under the Internal Revenue Code, Section 1221(2) [sic].
 
 
 14
 (2) That the property will not be allowed to qualify as an asset per Internal Revenue Code Section 1231 because of the short time it was inventoried, and because it was held expressly for the purpose of completing the sale to customers.
 
 In an amended judgment, the court stated:
 
 15
 [Taxpayer] cites a failure to make a finding on whether petitioner was in the business or trade of selling real estate. We thought that was covered in the first sentence of our Findings of Fact entered with the judgment, when we stated that the petitioner was created with the sole purpose of consummating the sale of real estate. To us, that established that it was in the trade or business as described. If that is not sufficient, we make such a finding at this time, since the evidence was clear.
 
 
 16
 As the amended judgment makes clear, the district court found that the taxpayer was in the trade or business of selling real estate, and the sale of the apartment building was in the ordinary course of that business. The burden of proof on the issue was on the taxpayer. Anastasato v. Commissioner, 794 F.2d 884, 887, 889 (3d Cir.1986). The finding that the property was held for sale in the ordinary course of taxpayer's business is subject to the plainly erroneous standard of review. Pleasant Valley Summit Land Corp. v. Commissioner, 863 F.2d 263, 268 (3d Cir.1988); Jersey Land & Development Corp. v. United States, 539 F.2d 311, 315 (3d Cir.1976). The record establishes that the taxpayer was formed to receive the property and hold it solely for sale to a customer. The taxpayer did not hold it as rental property. On this record we cannot hold that the district court's finding is clearly erroneous. Thus the court properly ruled that capital gains treatment was precluded. 26 U.S.C. Sec. 1221(1) (West 1982).
 
 B.
 
 17
 The Bureau of Internal Revenue contends that the district court erred in holding that the taxpayer could pay taxes on gains from the sale of the apartment building on an installment basis for the year ending November 30, 1982. In assessing tax on the full gain in that year, the Bureau of Internal Revenue relied on the fact that in Schedule M-1 the full gain on the sale was disclosed.
 
 
 18
 Income from the sale of real property occurring in a taxable year ending after October 19, 1980, where any part of the payment is to be received in a taxable year after the year of sale, is to be reported on an installment method. 26 U.S.C.A. Sec. 453 (West 1988). Under section 453(a), however, a taxpayer may elect not to pay taxes on an installment method. Such an election may only be revoked with the consent of the Secretary, under section 453(d)(3). Under Section 453(d)(1), the taxpayer is deemed to have made an election out of the installment method if it reports an amount realized equal to the full selling price (including any outstanding installment payments due) on a tax return filed for the year in which the installment sale takes place; this election is generally irrevocable.
 
 
 19
 The taxpayer argued at trial that it did not, by reporting the proceeds of sale on Schedule M-1, elect out of the installment method. Admitting that it did not file a Form 6252 Computation of Installment Sale Income with its tax return for fiscal 1982, taxpayer nevertheless contends that because it did not report the amount as income at all, it cannot have made an election.
 
 
 20
 A regulation applicable to the apartment building sale states that "A taxpayer who reports an amount realized equal to the selling price including the full face amount of any installment obligation on the tax return filed for the taxable year in which the installment sale occurs will be considered to have made an effective election...." 26 C.F.R. Sec. 15a.453-1(d)(3)(i). Our attention has been called to no case law applying this regulation in circumstances similar to those presented by this case. Given the post-1980 presumption in favor of installment sale treatment, however, we conclude that the disclosure of the gain in Schedule M-1 was not an inclusion of the full amount in a tax return filed for fiscal 1982. Thus we conclude that the district court did not err in treating the sale as an installment sale for purposes of fiscal 1982 income taxation.
 
 V.
 
 21
 The Bureau of Internal Revenue assessed a five percent negligence and interest penalty against the taxpayer for the fiscal year 1982 because of an underpayment due to negligence or intentional disregard of rules or regulations. 26 U.S.C.A. Sec. 6653(a) (West 1989). Once such an assessment is made, the taxpayer bears the burden of establishing the absence of negligence or intentional disregard of rules or regulations. See Mone v. Commissioner, 774 F.2d 570, 574 (2d Cir.1985); Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir.1984). The district court held that the taxpayer carried this burden. The court found as a fact that the taxpayer was not negligent, but made no specific finding that it did not intentionally disregard a rule or regulation.
 
 
 22
 The Bureau of Internal Revenue urges that the district court's finding that taxpayer did not negligently underreport is clearly erroneous. We need not resolve that issue, however, for the decision to set aside the section 6653(a) penalty involves a legal error with respect to the intentional disregard of a rule. At the time the return for the year ending November 30, 1982 was filed, Revenue Ruling 80-40 plainly precluded the taxpayer's treatment of its non-Virgin Islands source income. The section of the Internal Revenue Code which authorizes the issuance of rules and regulations provides that "the Secretary shall prescribe all needful rules and regulations for the enforcement of this title", and also that "[t]he Secretary may prescribe the extent, if any, to which any ruling or regulation ... shall be applied without retroactive effect. 26 U.S.C.A. Sec. 7805(a) & (b) (West 1989) (emphasis added). Regulations which impose penalties on tax preparers who negligently or intentionally disregard the rules provide that rules include "Internal Revenue Service revenue rulings issued under the Code." 26 C.F.R. Sec. 1.6694 (1986). Although revenue rulings "do not have the force of law," Danbury, 820 F.2d at 625, a taxpayer is required to pay taxes due pursuant to issued rules and regulations, and sue for a refund, or risk paying penalties if the position of the Internal Revenue Service is upheld by the courts. Druker v. Commissioner, 697 F.2d 46, 53, 54 (2nd Cir.1982). The taxpayer's argument that the Secretary lacked authority to issue Revenue Ruling 80-40 is statutorily unsupported, and inconsistent with Danbury. Thus taxpayer could only avoid the section 6653(a) penalty if it established that it did not intentionally disregard Revenue Ruling 80-40. The district court made no explicit finding on this issue, but the testimony of J. Mack with respect to Revenue Ruling 80-40 is insufficient as a matter of law to carry the taxpayer's burden. Thus we hold that the court erred in disallowing the section 6653(a) penalty for the year ending November 30, 1982.
 
 VI.
 
 23
 The judgment appealed from will be reversed to the extent that it affirmed the assessed deficiencies of tax and penalties for the fiscal year ending November 30, 1983, and to the extent that it disallowed the section 6653(a) penalty for the fiscal year ending November 30, 1982, but will in all other respects be affirmed.