CONDOR INTERNATIONAL, INC., N.K.A. APPLIED
RESOURCES, INC., PETITIONER[1] v.
COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

JAMES E. WELSH AND NANCY S. WELSH,
PETITIONERS v. COMMISSIONER OF
INTERNAL REVENUE,
RESPONDENT

Docket Nos. 37194-87, 39983-87.      Filed February 26, 1992.

---

[1] The instant case is the first case tried in a group of cases in a project known as "Virgin Islands 28(a)".

*William A. Seligmann,* for petitioners.*
*James M. Kamman* and *Alice Harbutte,* for respondent.

WELLS, *Judge:* In the instant consolidated proceedings (the instant case) respondent determined the following deficiencies in and additions to petitioners' Federal income tax:

*Condor International, Inc.*

| | | Additions to tax | | | | |
|---|---|---|---|---|---|---|
| | | Sec. | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(2) | 6655 | 6661(a) |
| 1984 | $1,462,800.62 | $365,720.16 | $73,144.03 | [1] | $78,218.87 | $365,720.16 |

[1]50 percent of the interest due on the deficiency.

*James E. Welsh and Nancy S. Welsh*

| | | Additions to tax | | | |
|---|---|---|---|---|---|
| | | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(2) | 6661(a) |
| 1983 | $808,659 | $201,461 | $41,096 | [1] | $202,165 |

[1]50 percent of the interest due on the deficiency.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all

---

*Briefs amici curiae were filed for E.C. Development Corp., Falstone, Inc., Pinetta & Hong Kong, Ltd., and Taconic Plastics, Ltd. by *Michael Savage;* St. Christine, Inc. and Jebadabe International, Inc., by *William Bruce Voss;* and by *Arthur P. Generaux, Jr.,* who has entered appearances for taxpayers in 67 other cases in the project.

Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions and stipulations between the parties, the issues remaining for our decision in the instant case are: (1) Whether petitioner, Condor International, Inc., n.k.a. Applied Resources, Inc. (Condor), was an inhabitant of the United States Virgin Islands (USVI) within the meaning of section 28(a) of the Revised Organic Act of the Virgin Islands during the taxable year ending May 31, 1984; (2) whether the period of limitations with respect to Condor's taxable year ending May 31, 1984, expired prior to the issuance of the notice of deficiency to Condor by respondent for such taxable year; (3) whether sections 1275(b) and 1277(c)(2) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2598, 2601, create a retroactive tax or violate the Due Process Clause of the Fifth Amendment; (4) whether Condor is a personal holding company; (5) whether Condor is subject to the alternative minimum tax; (6) whether Condor must report the gain on a sale of certain stock or whether the individual petitioners James E. Welsh and Nancy S. Welsh (the Welshes) must report the gain on such sale; (7) whether the Welshes are entitled to deduct their share of a distributive loss from Executive CoachCraft Limousine Division limited partnership; and (8) whether petitioners are liable for the additions to tax determined by respondent.

### FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulations and accompanying exhibits are incorporated in this opinion by this reference.

*Petitioners*

Condor was incorporated under the name Condor International, Inc., but is now known as Applied Resources, Inc. At the time its petition was filed, Condor's principal place of business was located in California. The parties have stipulated that venue for the purpose of appeal of the instant case lies with the Court of Appeals for the Ninth Circuit.

The Welshes are husband and wife. At the time their petition was filed they resided in Rolling Hills, California.

*Condor International, Inc.*

The Welshes organized Condor under the laws of Delaware on August 18, 1981, with a $1,000 cash contribution for 1,000 shares of stock. During all relevant periods, the Welshes, together with their children, were the beneficial owners of 100 percent of Condor's issued and outstanding stock. The Welshes intended to make the USVI Condor's principal place of business.

Prior to the organization of Condor, the Welshes had several discussions with their attorney about Condor and the tax treatment they thought it would receive as a USVI inhabitant. The Welshes' attorney advised them of what he determined to be the advantages and risks involved in conducting transactions through a USVI inhabitant corporation, including the possibility that the IRS might determine deficiencies in taxes, interest, and additions to tax if Condor were found not to be an inhabitant of the USVI. The Welshes' attorney also advised them of the existence of Rev. Rul. 80-40, 1980-1 C.B. 175[2] (obsoleted by Rev. Rul. 88-91, 1988-2 C.B. 257), in which the U.S. Internal Revenue Service (IRS) ruled that a taxpayer in a situation similar to Condor's would be liable for a deficiency in taxes because the taxpayer had tax obligations to the United States as well as to the USVI. The Welshes' attorney, however, convinced them that the ruling was contrary to law and would not be upheld in court.

Soon after organizing Condor, Mr. Welsh obtained a second opinion from a certified public accountant concerning Condor's potential tax liability. The C.P.A. advised Mr. Welsh to file a U.S. income tax return for Condor. The C.P.A.'s advice was based on an opinion of the U.S. Court of Appeals for the Third Circuit and Rev. Rul. 80-40.

Condor is an investment company that acquires, holds, and manages securities. Condor, however, was inactive from the time of its organization in 1981 until June 1983. Although Condor had a mailing address in Christiansted, St. Croix, USVI, it never engaged in a trade or business, owned equipment, or

---

[2]Rev. Rule 80-40, 1980-1 C.B. 175, discusses the circumstances under which a U.S. manufacturing corporation that has its principal office in the United States Virgin Islands (USVI) is treated as a USVI inhabitant and therefore able to satisfy its U.S. income tax obligation by paying tax on its income from all sources to the USVI.

rented office space in the USVI. Condor's entire income was U.S. source income, except for $1,152 of interest income from a $20,000 certificate of deposit in a USVI bank.

Although many of Condor's records were prepared in the office of its attorney in Los Angeles, California, its records were located in St. Croix at its director's office. Condor did not keep a general journal or general ledger. Condor's records consisted of a minute book, bank statements, canceled checks, a checkbook, monthly account summaries from investment managers, and a few miscellaneous invoices.

The Welshes discussed with their attorney the advisability of obtaining the services of Hortense Rowe in connection with Condor. Ms. Rowe resided in the USVI and conducted an accounting and business advisory service known as Caribbean Consulting Services, Inc. Ms. Rowe served as an officer and director of a number of companies seeking to establish USVI residency. The Welshes, as the shareholders of Condor, elected Ms. Rowe as its sole director in 1981. With the exception of the period between the time Ms. Rowe resigned in February 1982, until she was reelected in June 1983, Ms. Rowe remained the sole director of Condor from her election in 1981 until she was removed in March 1987, for embezzling funds from Condor. Ms. Rowe was also Condor's president and treasurer for such period. At various times, one or the other of Ms. Rowe's two brothers served as Condor's secretary until March 1987.

In June 1983, a checking account was opened in Condor's name at the Christiansted, St. Croix, branch of Banco Popular de Puerto Rico. Ms. Rowe and one of her brothers jointly had the sole signature authority over the checking account which served as Condor's commercial banking account from June 1983 until March 1987, when an account was opened at a southern California bank.

Additionally, in June 1983, two discretionary investment counsel accounts were opened in Condor's name at Van Deventer & Hoch (Van Deventer) in Glendale, California. The account agreements gave Van Deventer full discretion to deal with Condor's securities and did not require Van Deventer to consult the Welshes prior to making any investment decisions on behalf of Condor.

The Welshes occasionally authorized Van Deventer to distribute funds to pay Condor's expenses. After authorizing Van Deventer to make such distributions, the Welshes also directed Ms. Rowe to authorize the payments. Had Ms. Rowe declined to authorize the payments, Mr. Welsh would have replaced Ms. Rowe with someone who was more cooperative.

Condor's certificate of incorporation requires the stockholders' annual meeting and meeting to elect directors to be held in the USVI. Minutes of the shareholders reflect the fact that such meetings were conducted in 1984, 1985, and 1986, in the USVI. The record does not contain evidence that any shareholder meetings took place prior to 1984, although Condor was incorporated in 1981.

The certificate of incorporation requires all meetings of the board of directors to be held in the USVI. Minutes of the board reflect the fact that such meetings took place in 1983, 1984, 1985, 1986, and early 1987 in the USVI.

Condor attempted to make an investment located in the USVI, the primary purpose of which was to strengthen Condor's presence in the USVI and to give Condor additional credibility in claiming inhabitant status, but the investment never materialized. Condor did not locate any investments in the USVI, except for a $20,000 certificate of deposit described below.

During 1987, after the Welshes discovered that Ms. Rowe was embezzling from Condor and after the change in the USVI tax laws, Condor's principal place of business was relocated from the USVI to California. Ms. Rowe and her brothers were relieved from their positions as Condor's officers and director, and the Welshes were elected as Condor's officers and director. Until Condor's principal place of business was relocated to California, neither of the Welshes served as an officer or director of Condor.

Condor filed its corporate income tax returns with the USVI Bureau of Internal Revenue (BIR) for taxable year ending May 31, 1984, reporting income from sources within the United States exceeding $4 million but claiming the income was exempt from tax. Condor filed such return on August 14, 1984.

*Sale of Arlon Products*

Mr. Welsh created Arlon Products, Inc. (Arlon), in 1958, to manufacture products using pressure-sensitive adhesives.

Prior to July 1983, the Welshes owned approximately 75-80 percent of Arlon's stock. Four additional shareholders owned the remaining Arlon stock.

From the early 1970s, the Arlon shareholders received offers for the purchase of their Arlon stock. The Welshes met with all of such offerors. From the time they created Arlon, the Welshes intended to build a company which eventually could be sold.

During 1983, the Arlon shareholders located Keene Corp. (Keene), a potential buyer for the Arlon stock. Negotiations with Keene took place in the United States. No director or officer of Condor participated in the negotiations for the sale to Keene. On June 29, 1983, an agreement entitled "Stock Purchase Agreement Between Keene Corporation and Welsh Family Trust, William D. Roy, Richard Griffin, Glen Turner and James Welsh" (the stock purchase agreement) requiring a closing date of July 6, 1983, was signed. Neither Condor nor anyone acting on its behalf signed the stock purchase agreement. The stock purchase agreement provided for Keene to purchase the Welshes' Arlon stock. The purchase price for such stock was $3,375,000 to be paid at closing by cash in the amount of $3,300,000 and a note in the amount of $75,000.

By letter dated June 22, 1983, the Welshes' attorney directed Ms. Rowe to execute an original and a copy of minutes for a special board of directors meeting in which Condor approved the sale of the Arlon stock to Keene. On June 30, 1983, Ms. Rowe executed a "Stock Assignment Separate from Certificate" on behalf of Condor to transfer the Arlon stock to Keene. On July 1, 1983, the Welshes' attorney sent Ms. Rowe revised minutes of the board meeting and directed her to substitute the new minutes in Condor's minute book. On July 6, 1983, a stock certificate representing all of the Welshes' Arlon stock was issued to Condor, and a new certificate representing all outstanding shares of Arlon was issued to Keene.

On July 6, 1983, the Welshes signed a statement assigning to Condor the right to receive the consideration required to be paid to them under the purchase agreement. On July 13, 1983, Keene wire transferred $3,300,000 to Condor's bank account in the USVI. Subsequently, $3,280,000 was wired from Condor's checking account to a New York account Van Deven-

ter managed for Condor and the remaining $20,000 was used to purchase the USVI certificate of deposit in Condor's name.

The Welshes filed a joint Federal income tax return for taxable year 1983 on October 17, 1984. On April 13, 1984, the Welshes filed Form 4868, "Application for Automatic Extension of Time to File a U.S. Individual Tax Return", to extend the due date for their 1983 return to August 15, 1984. On August 14, 1984, the Welshes filed Form 2688, "Application for Extension of Time to File U.S. Individual Income Tax Return", approved by the IRS and extending the due date for such return to October 15, 1984. The Welshes did not report the gain from the sale of the Arlon stock on their 1983 Federal income tax return. Respondent determined that the gain on the sale of the Arlon stock is taxable to the Welshes for the taxable year in issue.

## *Partnership Deduction*

During 1982, Mr. Welsh invested in Executive CoachCraft, Inc., Limousine Division (Executive), a California limited partnership. As a limited partner, Mr. Welsh contributed $10,000 to the capital of Executive. During 1983, Mr. Welsh, along with his sons, who were also limited partners, attempted to withdraw from the partnership. Subsequently, Mr. Welsh decided to purchase his sons' interest in Executive for a price equal to the amount his sons had initially contributed. During 1984, Executive's general partner filed for bankruptcy. Mr. Welsh filed a claim as a creditor in Executive's bankruptcy proceeding. The Welshes claimed a distributive loss from Executive on their return for taxable year 1983, and respondent disallowed the loss.

OPINION

The USVI "mirror" system of taxation issues involved in the instant case are similar to issues that have been considered by the U.S. Court of Appeals for the Third Circuit on appeals from District Court cases involving deficiencies determined by the BIR. Accordingly, a brief discussion of the USVI mirror system of taxation and the Third Circuit cases interpreting such system will be helpful to an understanding of the instant case.

*The USVI Mirror System*

Through the Naval Appropriations Act, ch. 44, 42 Stat. 122 (1921), Congress made the U.S. income tax laws applicable to the USVI. *Danbury, Inc. v. Olive,* 820 F.2d 618, 620 (3d Cir. 1987); *Miller v. Quinn,* 792 F.2d 392, 394 (3d Cir. 1986). The Naval Appropriations Act of 1921 created a separate territorial income tax which the USVI Government would collect by applying the U.S. income tax laws with the necessary changes where appropriate. *Bizcap, Inc. v. Olive,* 892 F.2d 1163, 1165 (3d Cir. 1989); *Great Cruz Bay, Inc. v. Wheatley,* 495 F.2d 301, 303 (3d Cir. 1974). A "mirror" system of taxation was created by substituting "Virgin Islands" for "United States" in the Internal Revenue Code. *Bizcap, Inc. v. Olive, supra.* To satisfy a USVI tax obligation, a corporation inhabiting the USVI was required to pay the same amount of taxes to the BIR as a domestic U.S. corporation would be required to pay to the IRS under the same circumstances. *Bizcap, Inc. v. Olive, supra.*

The Naval Appropriations Act required some corporations to file two returns. For example, a domestic U.S. corporation doing business in the USVI would have to file a return with the IRS declaring its worldwide income, as well as a return with the BIR declaring its USVI source income. *Bizcap, Inc. v. Olive, supra.*

Section 28(a) of the Revised Organic Act of the Virgin Islands, ch. 558, 68 Stat. 508 (1954) (Act section 28(a)), amended the Naval Appropriations Act regarding the dual return requirements. To eliminate dual returns, Act section 28(a) provided as follows:

> The proceeds of customs duties, the proceeds of the United States income tax, the proceeds of any taxes levied by the Congress on the *inhabitants* of the Virgin Islands, * * * shall be covered into the treasury of the Virgin Islands, and shall be available for expenditure as the Legislature of the Virgin Islands may provide: *Provided,* that the term *"inhabitants of the Virgin Islands" as used in this section shall include all persons whose permanent residence is in the Virgin Islands,* and such persons shall satisfy their income tax obligations under applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the treasury of the Virgin Islands * * * [Emphasis added.]

Thus, the foregoing quoted provisions, known as the "inhabitant rule", allowed USVI inhabitants to file one return and

report all income earned, both USVI and non-USVI, to the BIR and satisfy their obligations to the IRS by paying the appropriate taxes on all such income to the BIR. *Bizcap, Inc. v. Olive, supra* at 1165; *Great Cruz Bay, Inc. v. Wheatley*, 495 F.2d 301, 303 (3d Cir. 1974). U.S. citizens who did not permanently reside in the USVI were still required to file two tax returns, one reporting and paying taxes to the USVI on USVI income and another reporting and paying taxes to the United States on income from all sources, with a credit for taxes paid to the USVI. *Great Cruz Bay, Inc. v. Wheatley, supra.*

Although the inhabitant rule defined inhabitants as all persons whose permanent residence was in the Virgin Islands, the statute did not define the term "permanent residence". In *Vitco, Inc. v. Virgin Islands*, 560 F.2d 180 (3d Cir. 1977), the court decided that a corporation that was chartered and maintained a post office address in the USVI was a USVI inhabitant. In *Danbury, Inc. v. Olive*, 820 F.2d 618 (3d Cir. 1987), the court held that Danbury, Inc. (Danbury), a corporation organized under the laws of Nevada, was a USVI inhabitant. Danbury, however, was headquartered and maintained its only office in the USVI, maintained all corporate documents in the USVI, maintained a bank account in the USVI, and held all shareholders' and directors' meetings in the USVI. The court found significance in the fact that Danbury's only presence was entirely within the USVI. *Danbury, Inc. v. Olive, supra.*

Danbury claimed that it was a foreign corporation for purposes of USVI taxation because it was not organized under the USVI laws and that it was a USVI inhabitant because it maintained its headquarters in the USVI. Danbury argued that a large portion of its income was not taxable by either the USVI or the United States. Danbury's argument was that, as the consequence of Danbury's USVI inhabitancy, Danbury would be required to pay tax on its worldwide income to the USVI under Act section 28(a), but as a foreign corporation Danbury would be taxed only on income derived in the USVI under section 882.[3] As a foreign corporation whose income was wholly

---

[3]Sec. 882, as amended by Revised Organic Act of the Virgin Islands, ch. 558, 68 Stat. 508 (1954), provides in part:

SEC. 882(a). IMPOSITION OF TAX—

generated from non-USVI sources, Danbury argued that it owed no tax to the USVI. Additionally, Danbury claimed that its U.S. tax obligations were satisfied under Act section 28(a) by filing a single return with the BIR, and therefore it was not required to file a return or pay any tax to the United States. *Danbury, Inc. v. Olive,* 627 F. Supp. 513, 515 (D.V.I. 1986), revd. 820 F.2d 618 (3d Cir. 1987). The USVI District Court agreed with Danbury's arguments. *Danbury, Inc. v. Olive, supra* at 519.

Reversing the District Court, the Third Circuit held that Act section 28(a) required a USVI corporate inhabitant to pay its total tax liability on both USVI source income and non-USVI source income to the USVI. *Danbury, Inc. v. Olive,* 820 F.2d at 622. Although the Third Circuit agreed with the District Court that Danbury was an inhabitant of the USVI, it held that Danbury was a domestic U.S. corporation with respect to the tax laws of the United States and a foreign corporation with respect to the tax laws of the USVI. *Danbury, Inc. v. Olive,* 820 F.2d at 622. Consequently, in addition to owing the USVI tax on the income it derived within the USVI, Danbury was required to satisfy its tax obligations to the United States by paying the tax it would have owed to the United States to the BIR. *Danbury, Inc. v. Olive,* 820 F.2d at 623.

Between the time of the District Court's decision in *Danbury* and the decision of the Third Circuit on appeal, Congress enacted the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085 (TRA 1986). Section 1275(b) of TRA 1986 repealed the inhabitant rule and returned the USVI tax system to the pre-1954 system requiring a foreign corporation doing business in the Virgin Islands to file two returns. *Business Ventures International v. Olive,* 893 F.2d 641, 644 (3d Cir. 1990); *Bizcap, Inc. v. Olive,* 892 F.2d at 1166-1167. Under section 1275(b) of TRA 1986, a U.S. corporation that is an inhabitant of the USVI is required to file two returns, one return with the IRS reporting its worldwide income and a second return with the BIR reporting its USVI income.[4] *Business Ventures Interna-*

---

(1) IN GENERAL.—A foreign corporation engaged in trade or business within the Virgin Islands during the taxable year shall be taxable as provided in section 11, 55, 59A or 1201(a) on its taxable income which is effectively connected with the conduct of a trade or business within the Virgin Islands.

[4]The problem of double taxation is avoided by application of the foreign tax credit or, for those corporations which qualify, the possession tax credit of sec. 936, made available to corporations

*tional v. Olive, supra* at 644; *Bizcap, Inc. v. Olive, supra* at 1166-1167; *Danbury, Inc. v. Olive, supra* at 625.

Section 1277(c)(2) of TRA 1986[5] specifies the tax years to which section 1275(b) of TRA 1986 applies, and consequently, the tax years for which the IRS is entitled to collect taxes due it from USVI inhabitants. *Business Ventures International v. Olive, supra* at 644; *Danbury, Inc. v. Olive,* 820 F.2d at 626. For taxable years ending prior to 1987, if on October 22, 1986 (the date of enactment of the Tax Reform Act of 1986), the applicable periods of limitations on assessment had not expired, the IRS is empowered by section 1275(b) to assess deficiencies against U.S. taxpayers inhabiting the USVI. *Danbury, Inc. v. Olive,* 820 F.2d at 626. If, however, the applicable limitation periods for assessment of such deficiencies had expired on October 22, 1986, the right to collect taxes that USVI inhabitants owe to the United States remains with the BIR. *Danbury, Inc. v. Olive, supra.*

*USVI Inhabitancy*

The first issue we must decide is whether, during its taxable year in issue, Condor was an inhabitant of the USVI. As explained above, Act section 28(a) and the applicable amendments contained in TRA 1986 apply only to "inhabitants" of the USVI. Thus, if Condor was not an inhabitant of the USVI, it would not qualify for the single filing rule and would therefore have been required to file an income tax return with the United States for its taxable year ending May 31, 1984, regardless of the amendments to Act section 28(a) made by TRA 1986.

---

operating in the Virgin Islands by Pub. L. 99-514, 100 Stat. 2085 (1986). See Chyatte, "Taxation Through the Looking Glass: The Mirror Theory and the Income Tax System of the U.S. Virgin Islands Before and After the Tax Reform Act of 1986", 6 International Tax & Bus. Law. 170, 193 (1988).

[5]Sec. 1277(c)(2) of Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2601, describes which taxpayers are responsible, at the time of enactment of 1275(b), for filing two returns. Sec. 1277(c)(2) provides in part:

(A) In general.—The amendment made by section 1275(b) shall apply with respect to—
(i) any taxable year beginning after December 31, 1986, and
(ii) any pre-1987 open year.

       *       *       *       *       *       *       *

(C) Pre-1987 open year.—For purposes of this paragraph, the term "pre-1987 open year" means any taxable year beginning before January 1, 1987, if on the date of the enactment of this Act the assessment of a deficiency of income tax for such taxable year is not barred by any law or rule of law.

The inhabitancy issue is a question of fact. *Danbury, Inc. v. Olive,* 820 F.2d at 620; *Vitco, Inc. v. Virgin Islands,* 560 F.2d 180, 183 (3d Cir. 1979). In deciding whether a corporation is an inhabitant of the USVI, the Third Circuit has considered such factors as the location of: Incorporation, corporate office, corporate documents, bank accounts, mailing address, and shareholders' and directors' meetings. *Danbury, Inc. v. Olive,* 820 F.2d at 620, 622; *Vitco, Inc. v. Virgin Islands, supra* at 183. We consider such factors in the instant case.

Although Condor is incorporated in Delaware, its certificate of incorporation states that its principal place of business is the USVI. During its taxable year in issue, Condor maintained its mailing address in Christiansted, St. Croix, USVI. Ms. Rowe, an officer of Condor and its only director, resided in the USVI and her actions as director took place in the USVI. A checking account was opened in Condor's name in St. Croix. The annual stockholders' meetings and the meetings to elect the director were held in the USVI. Condor's corporate records were maintained in USVI. After considering the entire record in the instant case, we find that Condor's only material presence was in the USVI. Consequently, we hold that Condor was an inhabitant of the USVI. *Danbury, Inc. v. Olive, supra; Vitco, Inc. v. Virgin Islands, supra.*

### Period of Limitations

We turn next to the issue of whether the period of limitations on assessment of taxes against Condor by the IRS has expired.

On August 14, 1984, Condor filed its return for its taxable year in issue with the BIR. On September 8, 1987, the IRS mailed the notice of deficiency in issue in the instant case to Condor. Condor contends that the 3-year period of limitations under section 6501(a) expired on August 15, 1987, and that, consequently, the notice of deficiency was not timely issued.

Respondent contends that Condor's taxable year in issue is a "pre-1987 open year", under section 1277(c)(2)(C) of TRA 1986 and that Condor was required to file two returns for the taxable year in issue, one with the BIR reporting its USVI income tax obligations and one with the IRS reporting its Federal income tax obligations. Respondent argues that,

because Condor did not file the required return with the IRS, the notice of deficiency was timely. We agree with respondent.

Section 1277(c)(2)(C) of TRA 1986 provides that the term "pre-1987 open year", for the purpose of applying section 1275(b) of TRA 1986, is any taxable year beginning before January 1, 1987, if on the date of the enactment of TRA 1986, the assessment of a deficiency of income tax for such taxable year is not barred by any law or rule of law. The date of enactment of TRA 1986 was October 22, 1986.

As noted above, in *Danbury, Inc. v. Olive*, 820 F.2d at 625-627, the Third Circuit interpreted Act section 28(a) to require that USVI inhabitants pay tax on all of their worldwide income. In order to decide which agency, i.e., the IRS or the BIR, was the proper agency to collect such tax, the court was required to interpret the provisions of section 1277(c)(2) of TRA 1986.[6]

In its interpretation of section 1277(c)(2), the Third Circuit reached several holdings relevant to the instant case. It held that the "relevant actor", regarding whether an assessment could be made on October 22, 1986, is the IRS. "The clear purpose of Section 1277(c)(2) is to specify the tax years for which *the United States* can, under section 1275(b), collect the taxes due it from Virgin Islands inhabitants." *Danbury, Inc. v. Olive*, 820 F.2d at 626.

The Third Circuit also considered the obvious bar to assessment, namely, the time bar.[7] *Danbury, Inc. v. Olive*, 820 F.2d at 626. The Third Circuit concluded that, until its repeal, Act section 28(a) required USVI inhabitants to file a single return with the BIR to satisfy both USVI tax obligations and U.S. tax obligations. Consequently, the only measuring date on which to base a decision as to whether any period of limitations bars the IRS from assessing a tax is the date the inhabitant filed a return with the BIR. The Third Circuit reasoned as follows:

---

[6]In *Danbury*, the deficiency was determined by the BIR, in contrast to the instant case, which arises out of a deficiency determined by the IRS.

[7]Clearly, the phrase "barred by any law or rule of law" does not include the inhabitant rule itself because that is the very rule sought to be eliminated by the enactment of section 1275(b) of TRA 1986. To hold otherwise would require that we interpret the statute in a manner that would give it no effect, in violation of the rule of interpretation set forth by the Supreme Court in *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932). See *Business Ventures International v. Olive*, 893 F.2d 641, 644 (3d Cir. 1990) (rejecting a similar argument made by the BIR in an attempt to assert that the BIR, rather than the IRS, was the proper agency to collect the tax).

Were we to accept the Internal Revenue Service's[8] argument that subsection 6501(c)(3) does apply to this case, every tax year since 1935 for every Virgin Islands inhabitant would be an open year. Congress obviously did not intend such a result. If it had, the complex time provisions of Section 1277(c)(2) would not have been enacted; Congress would have simply declared Section 1275(b) to be effective for all tax years. [*Danbury, Inc. v. Olive,* 820 F.2d at 627; fn. ref. omitted.]

The Third Circuit concluded that because Danbury's return was filed more than 3 years before October 22, 1986 (the date of enactment of TRA 1986), the years before the court were not "pre-1987 open years", unless Danbury filed a false return or willfully attempted to evade tax. *Danbury, Inc. v. Olive, supra* at 627.

Applying the Third Circuit's analysis to the instant case, we first note that Condor filed its return for taxable year ending May 31, 1984, with the BIR on August 14, 1984. Under the general rule of section 6501(a), no tax assessment against Condor could be made after August 14, 1987. Accordingly, an assessment of tax could be made against Condor on October 22, 1986. Consequently, we hold that Condor's taxable year in issue is a "pre-1987 open year".

Having concluded that such year is a pre-1987 open year, we must decide the effect that section 1275(b) of TRA 1986 has on the instant case. As noted above, section 1275(b) of TRA 1986 eliminates the inhabitant rule for taxpayers having pre-1987 open years. As a result of such elimination, Condor was required to file a return reporting its worldwide income with the IRS for the taxable year in issue, i.e., a pre-1987 open year. *Business Ventures International v. Olive,* 893 F.2d at 644; *Bizcap v. Olive,* 892 F.2d at 1166-1167; *Danbury, Inc. v. Olive,* 820 F.2d at 625-626 (each case holding that TRA 1986 required foreign corporations that were USVI inhabitants to file a return for any pre-1987 open year with the IRS reporting their worldwide income). As Condor failed to file such a return with the IRS for the taxable year in issue, the period of limitations with respect to such year was open on September 8, 1987, the date respondent issued the notice of deficiency to Condor. Sec. 6501(c)(3). Consequently, we hold that the notice of deficiency issued to Condor in the instant case is timely.

---

[8]The IRS filed an amicus curiae brief in *Danbury, Inc. v. Olive, supra.*

*Retroactive Tax Legislation and Equal Protection*

Petitioner and amici curiae argue that sections 1275(b) and 1277(c)(2) of TRA 1986 create a retroactive tax in violation of the U.S. Constitution. The Third Circuit has held that such provisions of TRA 1986 do not retroactively tax USVI inhabitants because the amount of tax owed by any taxpayer is not altered; the only question affected by the changes in TRA 1986 is who should collect taxes from USVI inhabitants. *Danbury, Inc. v. Olive,* 820 F.2d at 626 n.4. We agree with the Third Circuit that no retroactive taxation is created by the provisions of TRA 1986 that repealed the inhabitant rule.

Petitioners and amici curiae also argue that section 1277(c)-(2) of TRA 1986 violates the Due Process Clause of the Fifth Amendment. They base their argument on two limited exceptions found in TRA 1986 section 1277(c)(2)(D) and (E)[9] that exclude certain taxpayers from the changes under TRA 1986. They argue that their right to due process has been violated because the exclusions do not apply equally to all taxpayers. In *Bizcap, Inc. v. Olive,* 892 F.2d at 1167, the Third Circuit interpreted the exception found in section 1277(c)(2)(D) of TRA 1986. The court found that the exception effectively treated Bizcap as though TRA 1986 "had never been enacted for those years which are pre-1987 open years." It held, however, that while the exception exempted only Bizcap, Inc.

---

[9]Sec. 1277(c)(2)(D) and (E) provides:

(D) EXCEPTION.—In the case of any pre-1987 open year, the amendment made by section 1275(b) shall not apply to any domestic corporation if—
    (i) during the fiscal year which ended May 31, 1986, such corporation was actively engaged directly or through a subsidiary in the conduct of a trade or business in the Virgin Islands and such trade or business consists of business related to marine activities, and
    (ii) such corporation was incorporated on March 31, 1983, in Delaware.
(E) EXCEPTION FOR CERTAIN TRANSACTIONS.—
    (i) IN GENERAL.—In the case of any pre-1987 open year, the amendment made by section 1275(b) shall not apply to any income derived from transactions described in clause (ii) by 1 or more corporations which were formed in Delaware on or about March 6, 1981, and which have owned 1 or more office buildings in St. Thomas, United States Virgin Islands, for at least 5 years before the date of the enactment of this Act.
    (ii) DESCRIPTION OF TRANSACTIONS.—The transactions described in this clause are—
        (I) the redemptions of limited partnership interests for cash and property described in an agreement (as amended) dated March 12, 1981,
        (II) the subsequent disposition of the properties distributed in such redemptions, and
        (III) interest earned before January 1, 1987, on bank deposits of proceeds received from such redemptions to the extent such deposits are located in the United States Virgin Islands.
    (iii) LIMITATION.—The aggregate reduction in tax by reason of this subparagraph shall not exceed $8,312,000. If the taxes which would be payable as the result of the application of the amendment made by section 1275(b) to pre-1987 open years exceeds the limitation of the preceding sentence, such excess shall be treated as attributable to income received in taxable years in reverse chronological order.

(Bizcap) from the changes under TRA 1986, Bizcap remained liable to the BIR for taxes on its worldwide sources of income. *Bizcap, Inc. v. Olive, supra.* Consequently, although Bizcap was exempt from filing a return with the IRS reporting its worldwide income, Bizcap nevertheless was required to pay tax to the BIR on its worldwide sources of income, including its non-USVI source income. *Bizcap, Inc. v. Olive, supra.* In the instant case we have held that Condor was required to file a return with the IRS reporting its worldwide income. Consequently, the only difference between Bizcap and Condor is the agency to which each must pay income tax. Thus, the only effect of the exception under section 1277(c)(2)(D) of TRA 1986 was to require Bizcap to report its income and pay its tax to the BIR as opposed to the IRS. We do not find such circumstance to violate the Due Process Clause of the Constitution.

### *Personal Holding Company*

The next issue for us to decide is whether Condor is a personal holding company liable for purposes of applying the personal holding company tax under section 541. The notice of deficiency is presumed correct, and petitioners bear the burden of proving that Condor is not liable for the tax. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111 (1933).

Section 542(a) provides that a corporation is a personal holding company if it meets two requirements. The first requirement is met if at least 60 percent of its "adjusted ordinary gross income (as defined by section 543(b)(2))" is personal holding company income. Sec. 542(a)(1). The second requirement is met if at any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. With respect to the personal holding company issue, petitioners assert:

First, as a USVI inhabitant and a foreign corporation, Condor did not have any taxable income under VIIRC section 882(b) and consequently did not have any personal holding company income. Second, as required by VIIRC section 541(a)(2), fifty percent in value of Condor's stock was not owned, directly or indirectly, by or for not more than five individuals during the last half of its fiscal year ending May 31, 1984.

Petitioners, however, have not offered any evidence to support their assertions. Rules 142(a) and 151(e) require that

petitioners do more than make bare assertions in order to sustain their burden of proof. Furthermore, we have held above that Condor was subject to the literal United States Internal Revenue Code because the taxable year in issue is a pre-1987 open year. Consequently, we find petitioners' argument that as a USVI inhabitant Condor did not have any taxable income and therefore that Condor had no personal holding company income to be totally without merit. Accordingly, we hold that petitioners have failed to carry their burden of proving that Condor is not liable for the personal holding company tax. Rule 142(a).

*Alternative Minimum Tax*

Respondent determined in the notice of deficiency that Condor was subject to the alternative minimum tax provisions of section 56. Petitioners' sole arguments regarding the alternative minimum tax issue are as follows:

First, as a USVI inhabitant and a foreign corporation, Condor did not have any taxable income subject to the alternative minimum tax under section 882(b). Second, as a foreign corporation inhabitant in the USVI, Condor was not subject to United States income tax for its taxable year ending May 31, 1984.

As with petitioners' bare assertions regarding the personal holding company issue, petitioners have failed to support their position with either facts or authority. Furthermore, as we have held above that Condor was subject to the literal United States Internal Revenue Code because the taxable year in issue is a pre-1987 open year, we find petitioners' argument to be totally without merit. Accordingly, we hold that Condor is liable for the alternative minimum tax. Rule 142(a).

*Sale of the Arlon Stock*

The next issue for decision is whether Condor is liable for the tax on the gain from the sale of Arlon stock to Keene or whether the Welshes are liable for such tax. Petitioners have the burden of proof. Rule 142(a).

The incidence of taxation depends upon the substance of a transaction. *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334 (1945). As the means employed to transfer legal title are not solely determinative of the tax consequences arising from a sale of property, "Transactions must be viewed as a whole,

and each step, from commencement of negotiations to the consummation of the sale, is relevant." *Commissioner v. Court Holding Co., supra* at 334. "A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title." *Commissioner v. Court Holding Co., supra* at 334 (citing *Higgins v. Smith,* 308 U.S. 473 (1940); *Griffiths v. Commissioner,* 308 U.S. 355 (1939); *Minnesota Tea Co. v. Helvering,* 302 U.S. 609 (1938); *Gregory v. Helvering,* 293 U.S. 465 (1935)). If we were to permit formalities that exist solely for the purpose of altering tax liabilities to disguise the true nature of a transaction, the effectuation of Congress' tax policies would be seriously impaired. *Commissioner v. Court Holding Co., supra* at 334.

In *Court Holding Co.,* a corporation owned an apartment building which was transferred to its shareholders in the form of a liquidating dividend. In form, the shareholders conveyed the apartment building to a purchaser who originally had negotiated the purchase of the building from the corporation. The Supreme Court decided that the corporation was properly taxable on any gain from the sale. *Commissioner v. Court Holding Co., supra* at 322.

The Supreme Court relied on numerous facts in attributing the gain on the sale to the corporation. The corporation had legal title to the property when the negotiations for the sale took place. An oral agreement had been reached with respect to the terms and conditions of the sale which the parties intended to reduce to writing. The corporation's attorney intervened in the sale because the sale would have resulted in a large income tax on the corporation. Subsequently, the property was transferred to the shareholders of the corporation who entered a new sales contract with the same purchaser on substantially the same terms and conditions that the corporation had previously agreed upon.

The facts of the instant case are not materially distinguishable from the facts of *Court Holding Co.* In the instant case, the shareholders, not the corporation, had legal title to the property when the negotiations for the sale took place, as opposed to the factual setting in *Court Holding Co.,* involving the corporate ownership of property distributed for sale by the shareholders. We, however, do not find such difference to be

material. Consequently, we apply the principles of *Court Holding Co.* to the instant case. Although petitioners contend that the Welshes contributed their Arlon stock to Condor in early June, the record does not support their contention. Mr. Welsh testified at trial that no reason existed for the contribution of the Arlon stock to Condor until the negotiations with Keene were finished and the deal was certain to be completed. Moreover, the stock purchase agreement was signed by the Welshes individually, but it was not signed by or on behalf of Condor. Finally, the Welshes originally intended to have the Welsh Family Trust receive the proceeds from the sale of the Arlon stock, but when the closing date arrived the Welshes signed a statement designating Condor to receive the consideration for sale of the Arlon stock.

Considering such circumstances, we are convinced that the Welshes attempted to transform their sale of the Arlon stock into a sale by Condor, using Condor as a conduit through which to pass the title of the stock. *Commissioner v. Court Holding Co., supra* at 334. Thus, in substance the Welshes sold the Arlon stock to Keene, not Condor. Accordingly, we hold that the Welshes are liable for the tax on the gain from the sale of such stock.

## Partnership Loss

Respondent determined that the Welshes are not entitled to any distributive loss from Executive because the Welshes had not established that they had sustained a loss. The notice of deficiency is presumed correct, and petitioners have the burden of proving that the notice is incorrect. Rule 142(a).

Petitioners' sole contention is that they are entitled to the Executive loss because they were the owners of the partnership interest. Petitioners have not offered any evidence to support their entitlement to the loss, and they have not cited any authority in support of their position. Consequently, we hold that petitioners have failed to meet their burden of establishing their right to deduct the loss. Rule 142(a).

## Additions to Tax

Respondent determined additions under section 6651(a)(1) against Condor and the Welshes. To avoid the addition for failure to file a return on its due date, the taxpayer bears the

burden of proving (1) that the failure did not result from "willful neglect", and (2) that the failure was "due to reasonable cause". *United States v. Boyle,* 469 U.S. 241, 245 (1985). The taxpayer must demonstrate that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect includes a conscious, intentional failure or reckless indifference in timely filing a return. *United States v. Boyle, supra* at 245.

We have held above that under TRA 1986 Condor was required to file a return with the IRS because Condor's taxable year in issue was a pre-1987 open year. Inasmuch as Condor failed to file such a return, petitioners must demonstrate that Condor's failure was due to reasonable cause and not willful neglect.

Petitioners claim that they relied on the advice of counsel in not filing a return with the IRS. Reasonable cause is established when a taxpayer shows that he reasonably relied on an accountant or attorney's advice that filing a return was not necessary, even when such advice turned out to have been mistaken. *United States v. Boyle, supra* at 250.

When Condor was created in 1981, the Welshes were advised by counsel that Condor would neither have to file a return with the IRS nor pay income tax on its U.S. source income. Petitioners, however, received a second, conflicting opinion advising them to file a return for Condor with the IRS and report and pay tax on its worldwide income. Petitioners elected not to heed that advice and have failed to explain why they proceeded contrary to such advice. Moreover, petitioners have failed to explain why, after the change in the inhabitant rule by TRA 1986, advice of counsel was not sought with respect to their decision not to file a return for Condor with the IRS for the taxable year in issue. In the absence of such explanations, we are unable to find that Condor's reliance on counsel was reasonable or that its failure to file was due to reasonable cause. Accordingly, we hold that Condor is liable for the addition to tax under section 6651(a)(1).

With respect to the Welshes' liability for the addition to tax under section 6651(a)(1), respondent determined in the notice of deficiency that the automatic extension request that the

Welshes filed for taxable year 1983 was invalid because they did not properly estimate their income.

An automatic 4-month extension is valid if the taxpayer files a signed Form 4868 on or before the date the individual's return is due with the internal revenue office with whom the return is required to be filed, the application shows the full amount properly estimated as the taxpayer's tax, and the full amount properly estimated as tax which is unpaid as of the date of filing accompanies the application. Sec. 1.6081-4, Income Tax Regs.

In the instant case the Welshes filed a . Form 4868 and subsequently filed a Form 2688, which the director of the Fresno Service Center approved. An automatic extension, however, is void if the foregoing regulatory requirements are not satisfied, even though a second extension has been approved. *Crocker v. Commissioner,* 92 T.C. 899 (1989); *Cannata v. Commissioner,* T.C. Memo. 1990-502; *Perry v. Commissioner,* T.C. Memo. 1990-228.

For purposes of deciding whether an automatic extension is valid, a taxpayer is treated as having properly estimated his tax liability when the taxpayer makes a bona fide and reasonable estimate of the tax liability based on the information available at the time the request for extension is made. *Crocker v. Commissioner, supra* at 908.

In the instant case, petitioners have offered no evidence that the Welshes' estimate of their taxes for taxable year 1983 was reasonable. Accordingly, petitioners have failed to prove that their automatic extension was valid. Because the automatic extension was invalid, the Welshes' tax return for taxable year 1983 was required to be filed on April 15, 1984. As the Welshes' return was not filed until October 17, 1984, petitioners must establish that the Welshes' failure to file a timely return is based on reasonable cause and not willful neglect in order for the Welshes to avoid liability for the addition to tax under section 6651(a)(1). *United States v. Boyle, supra* at 245. Petitioners, however, have offered no evidence that the Welshes' failure to file was the result of reasonable cause and not the result of willful neglect. Consequently, we hold that the Welshes are liable for the addition to tax under section 6651(a)(1).

Respondent determined additions to tax against Condor and the Welshes for negligence under section 6653(a)(1) and (2). Negligence is a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. *Neely v. Commissioner,* 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving error in respondent's determination of the addition to tax under section 6653(a). *Bixby v. Commissioner,* 58 T.C. 757, 791-92 (1972).

We have held above that, due to the change in the inhabitant rule by TRA 1986, Condor was required to file a return with the IRS for the taxable year in issue and that it did not file such a return. We also have held that Condor and the Welshes have not shown that their failure to timely file their return was the result of reasonable cause as opposed to willful neglect. In the absence of any showing that their failure to timely file was reasonable or that they acted with ordinary prudence, petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2) for the taxable years in issue. *Emmons v. Commissioner,* 92 T.C. 342 (1989), affd. 898 F.2d 50 (5th Cir. 1990).

Respondent also determined an addition to tax under section 6661(a) against Condor and the Welshes. An addition is required under section 6661(a), if petitioners substantially understated their income tax for the taxable years in issue. The amount of the addition is 25 percent of the amount of any underpayment attributable to such understatement. *Pallottini v. Commissioner,* 90 T.C. 498 (1988).

Section 6661(b)(2)(B) provides that the amount of the understatement shall be reduced by that portion of the understatement which is attributable to the taxpayer's treatment of any item for which substantial authority existed for such treatment or any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Petitioners do not claim that their returns adequately disclosed the facts affecting the tax treatment of the items in issue.

In evaluating whether a taxpayer's position regarding the tax treatment of an item is supported by substantial authority, the weight of authorities in support of the taxpayer's position must be decided using the same analysis that the court would

follow in evaluating the treatment of the item. *Antonides v. Commissioner,* 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990); sec. 1.6661-3(b)(3), Income Tax Regs.

Petitioners have the burden of proving respondent's determinations under section 6661 are incorrect. *Weis v. Commissioner,* 94 T.C. 473, 490 (1990). Petitioners, however, have not cited any authority that supports their respective positions. Consequently, we hold that petitioners are liable for the addition to tax for substantial understatement of their taxes for the years in issue.

The final issue we must decide is whether Condor is liable for the addition to tax under section 6655, which provides for an addition to tax when a corporation makes an underpayment of estimated tax.

Condor contends that it is not liable for the addition to tax under section 6655 citing as authority section 1543 of TRA 1986. That section provides the following:

> No addition to tax shall be made under section 6654 or 6655 of the Internal Revenue Code of 1986 (relating to failure to pay estimated tax) for any period before April 16, 1987 (March 16, 1987, in the case of a taxpayer subject to section 6655 of such Code), with respect to any underpayment, to the extent such underpayment was created or increased by any provision of this Act.

Section 1543 of TRA 1986 was enacted at the same time the inhabitant rule was repealed. On its face, the provision gives relief from the addition to tax for underpayment for estimated taxes caused by the repeal of the inhabitant rule, which repeal was retroactive to the extent of pre-1987 open years under section 1277(c)(2) of TRA 1986. The General Explanation of TRA 1986 section 1543, however, would apparently limit such relief to situations in which the taxpayer has filed a return on or before April 15, 1987. The General Explanation provides in part:

> The Act makes several changes that increase tax liabilities from the beginning of 1986. Consequently, the Act allows individual taxpayers *until* April 15, 1987, and corporations until March 15, 1987 (the final filing date for calendar year returns), to pay their full 1986 income tax liabilities without incurring any additions to tax on account of underpayments of estimated tax to the extent that the underpayments are attributable to changes in the law made by [the] Act. [Emphasis added.]

Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 1296 (J. Comm. Print 1987). Because Condor never filed a return with the United States, the general explanation appears to interpret section 1543 of TRA 1986 as not providing relief from the addition. On its face, however, section 1543 of TRA 1986 applies to Condor. The plain meaning of the provision is clear, namely, that no addition shall be made under section 6655 for *any* period before March 16, 1987. The provision is not conditioned upon filing a return. While the general explanation is entitled to great respect, it is not a part of the legislative history of the statute it explains and, consequently, should not be relied upon to contradict the plain words of the statute. *Zinniel v. Commissioner,* 89 T.C. 357, 367 n.12 (1987). We therefore hold that Condor is not liable for the addition to tax under section 6655.

We have considered all of petitioners' other arguments and those of amici curiae and find all such arguments lacking in merit.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*