THOMAS B. VERDUNN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Verdunn v. Commissioner
Docket No. 28511-90
United States Tax Court
T.C. Memo 1995-117; 1995 Tax Ct. Memo LEXIS 120; 69 T.C.M. (CCH) 2142; March 21, 1995, Filed *120 Decision will be entered under Rule 155. For petitioners: B. Gray Gibbs
For respondent: Willie Fortenberry, Jr., and Michael Zima. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in and additions to Federal income tax for petitioner's 1982 through 1986 taxable years as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
1982
$ 47,088
-- --
--
1983
16,982
-- --
--
1984
16,618
-- --
--
1985
16,039
-- --
--
1986
1,216
$ 1,702
$ 340
[1]
Sec.
Sec.
Sec.
6653(b)(1)
6653(b)(2)
6661
1982
$ 25,487
[1]
$ 11,772
1983
9,047
[1]
4,246
1984
8,309
[1]
4,155
1985
12,668
[1]
4,010
1986
-- --
--
Section references are to the Internal Revenue Code in effect for the years under consideration. Rule references are to this Court's Rules of Practice and Procedure. The issues for our consideration are: (1) Whether petitioner failed to report income from his S corporation for each of the taxable years 1982 through 1986; (2) whether petitioner failed *121 to report interest income for 1982 and dividend income for 1983; (3) whether petitioner is entitled to income averaging for his 1982 taxable year; [1] (4) whether petitioner is entitled to passthrough investment tax credits from an S corporation for 1983, 1984, and 1985; [2] (5) whether petitioner is liable for an addition to tax for fraud and/or substantial understatements of tax for each of the years 1982 through 1985; (6) in the alternative to fraud, whether petitioner is liable for additions to tax attributable to negligence and/or failure to timely file his income tax return for any of the years 1982 through 1985; (7) whether petitioner is liable for additions to tax for 1986 attributable to negligence and/or failure to timely file his income tax return; (8) whether the period for assessment and collection of the tax had expired for 1985 and 1986 at the time respondent mailed the notice of deficiency; [3] and (9) whether petitioner is estopped from denying that he willfully and knowingly made and subscribed to his own and his S corporation's returns of income for 1982, which he did not believe were true and correct as to every material matter, due to his guilty plea to charges under *122 section 7206(1). [4]
*123 FINDINGS OF FACT [5]
Petitioner Thomas B. Verdunn resided at Treasure Island, Florida, at the time his petition was filed. Petitioner filed his 1982, 1983, and 1984 income tax returns on June 3, 1985, and his 1985 and 1986 income tax returns on June 30, 1988. Petitioner completed high school and 3 years of trade school. He worked for 6 years in the automotive industry in positions involving mechanical skill. Petitioner then became employed as a laborer where he was responsible for the carrying, positioning, and tying of reinforcing steel that went into the construction of buildings. During 1979, petitioner began a labor contracting business where he obtained contracts to install reinforcing rods. Under the contracts, petitioner, as a subcontractor, provided the labor and wire needed to tie together the reinforcing rods, which were provided by the prime contractor. Initially, the business was operated as a sole proprietorship. *124 As of April 1, 1981, the business was operated through Statewide Steel Erectors, Inc. (Statewide), an S corporation that petitioner organized. Petitioner was the sole owner of Statewide during the years under consideration. Petitioner and Statewide were both on the cash method of accounting for tax reporting purposes. From 1979 on, petitioner hired Douglas Davenport, an accountant, to assist in the record keeping and tax reporting of petitioner's business activity. Statewide's reported gross receipts were determined for the fiscal years ended March 31, 1982 through 1986, by Douglas Davenport, who totaled the amounts deposited to Statewide's bank account. Petitioner also provided the accountant with check stubs, vouchers, and other records from which deductions could be determined. Petitioner noted some of the purposes (i.e., whether the item was business or personal) on the check stubs. Petitioner was generally aware of the method by which the accountant prepared the return and the difference between personal and business items. The accountant relied on petitioner to identify which items were business and which were personal. Petitioner failed either to deposit to Statewide's *125 account or to report separately checks totaling $ 11,519, $ 4,451.60, and $ 7,640.40, which were includable in the gross receipts of petitioner and/or Statewide for the fiscal years ended March 31, 1982, 1983, and 1984, respectively. During 1981, petitioner purchased a boat for $ 42,000 and, for part payment, used checks totaling $ 10,700 that were made payable to Statewide from Tyler Construction. Petitioner also used other checks made payable to Statewide in connection with his boat and other personal expenditures. Statewide did not report these amounts as gross receipts in the total amounts of $ 19,172 and $ 1,875 for its fiscal years ended March 31, 1982 and 1983, respectively. During the years in question, petitioner deposited Statewide corporate receipts into his personal bank account. Petitioner also issued checks drawn on Statewide's bank account for improvements to petitioner's personal residence, recreational boat, and automobile. For example, during 1982 and 1983, petitioner paid for a swimming pool and boat dock in connection with his personal residence with Statewide checks (or funds). During the same period, petitioner used the same method to purchase a large *126 screen television and watch, and to make numerous payments to his wife and mother. During some of the years under consideration, petitioner purchased cashier's checks with checks made payable to Statewide, and those amounts were not included in Statewide's gross receipts. On numerous occasions, the proceeds of the cashier's checks were used for petitioner's personal purposes. Petitioner thus diverted corporate funds which were not first included in Statewide's gross receipts, or reported on its returns, in the amounts of $ 36,760.17, $ 18,221.89, $ 32,444.25, and $ 20,790 for Statewide's fiscal years ended March 31, 1982, 1983, 1984, and 1985, respectively. During the years in question, Statewide claimed depreciation on its returns for petitioner's personal assets, such as his television, sports car, boat trailer, and other items. For 1982, petitioner received $ 1,551.76 of interest income, which he did not report on his income tax return. During 1983, petitioner's pickup truck, which he used in his business (and depreciated to a book (salvage) value of $ 75.02) was involved in an accident. The damaged remains were later sold for $ 2,500. However, no gain from this sale was *127 shown on Statewide's or petitioner's returns. Due to an error by petitioner's accountant, petitioner failed to report $ 13,464.19 of passthrough income from Statewide for petitioner's 1983 taxable year. Statewide's return reflected approximately $ 18,000 in distributable income, but the accountant reported approximately $ 4,500 from Statewide on petitioner's return. This error was caused by confusion about the difference in taxable years. Statewide was in a fiscal year and petitioner was in a calendar year. On April 14, 1988, a two-count criminal information was filed against petitioner, charging him with willfully and knowingly subscribing to Statewide's fiscal 1982 Form 1120S under section 7206(1). The information contained the charges that petitioner did not believe the return to be true and correct as to every material matter and that he likewise made and subscribed to his 1982 Form 1040 not believing it to be true and correct in every material matter. Petitioner entered a guilty plea to both counts on May 6, 1988, and admitted in his plea agreement that he caused his return preparer to understate Statewide's income and to overstate deductions for Statewide's 1982 fiscal *128 year. Petitioner, in the plea agreement, also admitted that he diverted income from Statewide's bank account, which caused such income to be excluded from Statewide's returns. More specifically, he admitted depositing Statewide's checks in his personal account, endorsing Statewide's checks to third parties, and using Statewide's checks to purchase cashier's checks. Petitioner also agreed that, for 1982, he paid personal expenses with Statewide's checks, indicating on the check stubs that the expenditures were for business purposes, such as payment of a subcontractor or the purchase of materials. Petitioner and respondent, through respondent's agents, entered into valid consents extending the period for assessment of the 1982, 1983, and 1984 taxable years beyond the time of respondent's September 25, 1990, mailing of the notice of deficiency in the instant case. In addition, petitioner's 1985 and 1986 income tax returns were both filed on June 30, 1988, so that the period for assessment for 1985 and 1986 had not expired at the time the notice of deficiency was mailed to petitioner. ULTIMATE FINDINGS OF FACT Petitioner's taxable income was understated for the taxable years 1982, *129 1983, 1984, 1985, and 1986 in the amounts of $ 102,479, $ 44,235, $ 48,858, $ 35,471, and $ 3,734, respectively. Of those amounts for 1982, 1983, 1984 and 1985, $ 97,282, $ 18,482, $ 34,903, and $ 18,059, respectively, were attributable to fraud. Petitioner's tax was underpaid in the amounts of $ 47,088, $ 16,982, $ 16,618, $ 16,039, and $ 1,216 for the taxable years 1982, 1983, 1984, 1985, and 1986, respectively. OPINION Respondent determined that petitioner's S corporation did not report the correct amount of income and, in turn, that petitioner did not report his full distributive share of income for each of the taxable years 1982 through 1986. Respondent's determination was based on specific adjustments, including the diversion of corporate funds into personal accounts, the diversion of corporate funds to third parties and to other personal uses, depreciation claimed on nonbusiness assets, and gain on the sale of a business asset. In addition, respondent determined that petitioner failed to report interest and dividend income. With respect to these determinations, petitioner bears the burden of proving that respondent erred. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *130 There is no dispute that petitioner was required to report his distributive share of Statewide's income. See sec. 1366(a)(1)(A). On brief, petitioner concedes that, for the most part, he does not contest the additional income tax liability as determined by respondent. [6] Petitioner argues that a few of respondent's adjustments to Statewide are incorrect because the amounts were attributable to petitioner's predecessor proprietorship and should not be included in petitioner's distributive share of Statewide's income. The checks referenced by petitioner were drawn by customers naming Statewide as payee, but without Statewide's corporate designation (Inc.). Despite positing the assumption that those checks were properly for work performed by petitioner's proprietorship rather than the S corporation, petitioner has not shown that he accounted for or reported such amounts on his individual Federal income tax return for the period(s) covered by the specific checks referenced. Accordingly, petitioner's distinction would not make a difference in the amount of tax liability ultimately due in this case. *131 Petitioner failed to carry his burden of proof; hence, we find that he is liable for the full amounts of the income tax deficiencies determined by respondent for each of the taxable years 1982 through 1986. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Miller v. Commissioner, 94 T.C. 316, 332 (1990) (citing Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958)). Respondent has the burden of proving, by clear and convincing evidence, that an underpayment exists for the years at issue, and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 378 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent *132 need not prove the precise amount of the underpayment resulting from fraud -- only that some part of the underpayment of tax for each year at issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Petitioner concedes that there was unreported income and a resulting underpayment for each of the years at issue. We accordingly must decide if any part of the underpayments was due to fraud. Hebrank v. Commissioner, 81 T.C. 640 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); *133 Otsuki v. Commissioner, 53 T.C. 96 (1969). Fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). However, fraud may be proved by circumstantial evidence and reasonably inferred from the facts, because direct proof of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra; Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). A taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, supra at 499. Courts have relied *134 on several indicia of fraud when considering the section 6653(b) addition to tax. Although no single factor may conclusively establish fraud, the existence of several indicia may be persuasive circumstantial evidence of such. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93. Circumstantial evidence which may give rise to a finding of fraudulent intent includes: (1) Understating income; (2) keeping inadequate or no records; (3) failing to file tax returns; (4) maintaining implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with tax authorities; (7) filing false Forms W-4; (8) failing to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal an illegal activity. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; see Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990). *135 These "badges of fraud" are nonexclusive. Miller v. Commissioner, supra at 334. Both the taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. United States v. Murdock, 290 U.S. 389, 395 (1933); Spies v. United States, supra at 497; Plunkett v. Commissioner, supra at 303. Respondent argues that petitioner knowingly used Statewide as a device with which to understate income by failing to report various corporate receipts and by claiming false deductions. For 1982, respondent argues that petitioner is collaterally estopped from denying facts that arise from petitioner's plea of guilty to an information concerning the filing of Statewide's and petitioner's individual returns. Respondent further contends that petitioner's failure to report relatively large amounts of his taxable income for the years 1982 through 1985 was part of a continuing pattern of activity that was intentionally pursued. Petitioner counters that many of the traditional badges of fraud are not present in this *136 case. For example, petitioner points out that there was no second set of books, no attempts to conceal assets by means of nominees or alter egos, and no evidence of false or altered documents. Petitioner asserts that the only evidence of fraud here is the existence of 4 years of understatements and that, standing alone, such evidence is insufficient to support a finding of fraud in any of the taxable years under consideration. Finally, petitioner argues that his lack of sophistication was the reason for the underreporting of income. We agree with respondent. The evidence here demonstrates that petitioner was well aware that Statewide's income was understated and, in turn, that his own 1982 through 1985 income tax returns likewise had understated income. We cannot accept petitioner's self-serving statement that he believed that his accountant was receiving his Forms 1099 and that all receipts were being included. This is especially true in light of the many personal expenditures made with Statewide's funds and/or unreported receipts. Having observed petitioner at trial and considering the record, we cannot accept petitioner's claim of naivete. Obvious personal expenditures *137 were made and labeled by petitioner as being for business. Petitioner knowingly diverted Statewide's income by depositing Statewide's checks into his personal bank account, endorsing Statewide's checks, and negotiating them with third parties for nonbusiness purposes, and converting Statewide's receipts, in the form of checks, into cashier's checks and using the cashier's checks for personal purposes. All of Statewide's checks were gross receipts of Statewide, not petitioner individually. Petitioner diverted these gross receipts knowing that in doing so gross receipts and taxable income of Statewide would be understated and, ultimately, petitioner's individual income tax return would be understated. We accept petitioner's argument that he treated the corporation's funds as his own, yet we cannot accept his contention that he did not know the difference or the ultimate consequences. Likewise, we are unable to place fault on petitioner's accountant, other than with respect to his error involving the difference between Statewide's fiscal year and petitioner's calendar year, resulting in the omission of $ 13,464.19 of distributable taxable income (from Statewide) for petitioner's *138 1983 taxable year. Petitioner also overstated some business deductions by paying personal expenses with checks drawn on Statewide's checking account and by reflecting a business purpose on the check stub, which petitioner presented to the tax return preparer. These were not isolated instances of error or inadvertence; these were part of a continuing pattern of activity that petitioner knew would result in his individual income tax return being false for each of the taxable years 1982, 1983, 1984, and 1985. Respondent argues that petitioner is collaterally estopped from denying that he willfully and knowingly subscribed to Statewide's fiscal 1982 Form 1120S and his own 1982 Form 1040 which he did not believe to be true and correct as to each material matter. In the plea agreement, petitioner admitted that he diverted income from Statewide's bank account, causing its omission from Statewide's tax returns. Additionally, he admitted depositing Statewide's checks in his personal account, endorsing Statewide's checks to third parties, and using Statewide's checks to subsequently purchase cashier's checks. Petitioner also admitted that, for 1982, he paid personal expenses with Statewide's *139 checks, indicating on the check stubs that the expenditures were for business purposes, such as payment of a subcontractor or the purchase of materials. Although petitioner's admissions to violations of section 7206(1) for 1982 do not estop him from denying that he intentionally filed a fraudulent return, they do represent probative evidence on which we may rely in reaching the conclusion and finding that petitioner's 1982 income tax return was fraudulent. Wright v. Commissioner, 84 T.C. 636, 643-644 (1985). Although petitioner's guilty plea for 1982 supports our finding that petitioner's 1982 individual return was fraudulent, respondent has also proven, by other clear and convincing evidence, that each of petitioner's Federal income tax returns for 1982, 1983, 1984, and 1985 was fraudulent. Although we have found that a part of each underpayment for 1982, 1983, 1984, and 1985 was due to fraud under section 6653(b)(1), we must still decide what portion of each underpayment was fraudulent. The addition to tax under section 6653(b)(2) applies only to that portion of the underpayment attributable to fraud. Some of the specific items of unreported *140 income or overstatement of deductions were caused by an accountant's error in judgment, and did not rise to the level of being fraudulent. For example, during the years in question, depreciation was claimed on Statewide's returns for petitioner's personal assets, such as his television, sports car, boat trailer, and other items. Petitioner purchased these items using Statewide's checks which likely led his tax return preparer to treat these items as business assets. Our record, however, does not support the finding that petitioner intentionally and fraudulently attempted to reduce his income by means of depreciation claimed by his accountant on the corporation's return. Based on these circumstances, we are unable to hold that petitioner would have been aware of the existence or effect of these items. For 1982, petitioner received $ 1,551.76 of interest income, which he did not report on his income tax return. Likewise, we cannot find that this omission was within petitioner's knowledge. During 1983, a pickup truck used in petitioner's business and depreciated to a book (salvage) value of $ 75.02 was involved in an accident, and the damaged remains were sold for $ 2,500. This *141 also represents an item that is somewhat technical in nature, and considering petitioner's background and knowledge, we cannot find that this item was intentionally or fraudulently omitted by petitioner. Also, due to an error by petitioner's accountant, there was a failure to report $ 13,464.19 of distributable income from Statewide on petitioner's 1983 tax return. This, obviously, is not a fraudulent item. After analyzing the entire record, we find that for the taxable years 1982, 1983, 1984, and 1985, understatements of $ 97,282, $ 18,482, $ 34,903, and $ 18,059, respectively, were attributable to fraud. Accordingly, those years' amounts are subject to the section 6653(b)(2) portion of the addition to tax. Having decided that petitioner is liable for the fraud addition for 1982 though 1985, it is unnecessary to consider respondent's alternative position to fraud; i.e., whether petitioner is liable for the additions to tax attributable to negligence and/or failing to timely file his income tax return for any of the years 1982 through 1985. We next consider whether petitioner is liable for the addition to tax under section 6661 for any of the taxable years 1982, 1983, 1984, *142 or 1985. Section 6661 provides for a 25 percent addition to tax attributable to a taxpayer's substantial understatement of income tax. A substantial understatement exists if the amount of such understatement exceeds the greater of 10 percent of the tax required to be shown on a return, or $ 5,000. Sec. 6661(b)(1)(A). If the percentage or monetary threshold is met, then petitioner may show that the addition should not be applied to any part of the understatement for which there was either substantial authority or adequate disclosure. Respondent may waive the addition on a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Petitioner argues that Congress never intended that section 6661 apply automatically or that a stacking of additions to tax should occur. Petitioner, however, has the burden of showing that respondent's determination regarding this item is in error. Rule 142(a). Petitioner has presented no evidence or arguments which would carry his burden. Furthermore, see Condor Intl. Inc. v. Commissioner, 98 T.C. 203 (1992), where additions under sections 6651, 6653, and *143 6661 were applied. Accordingly, to the extent that the recalculation of the deficiencies under Rule 155 results in a substantial understatement for any of the 1982 through 1985 taxable years, section 6661 shall apply. Respondent also determined that petitioner's 1986 return was delinquent under section 6651(a)(1) and that petitioner was negligent and/or that he intentionally did not follow the rules or regulations pursuant to section 6653(a)(1)(A) and (B). Section 6651(a)(1) provides for a 5 percent per month, not exceeding 25 percent in the aggregate, addition to tax if a tax return is filed late without a showing that it is due to reasonable cause and not due to willful neglect. Section 6653(a)(1)(A) provides for a 5-percent addition to tax on the underpayment of tax attributable to negligence and/or the intentional disregard of rules and regulations. If section 6653(a)(1)(A) is applicable, then section 6653(a)(1)(B) provides for additional interest in an amount equal to 50 percent of the interest due on the portion of the underpayment of tax attributable to negligence. Petitioner's 1986 income tax return was filed on June 30, 1988, more than 5 months after the April 15, 1987, *144 due date. Petitioner has not shown that his failure to file timely was due to reasonable cause and/or not due to willful neglect. Accordingly, respondent's determination with respect to section 6651(a)(1) for 1986 is sustained. Negligence is a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proving that respondent's determination of negligence is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). A taxpayer's failure to file may be considered evidence of negligence. Emmons v. Commissioner, 92 T.C. 342, 350 (1989), affd. 898 F.2d 50 (5th Cir. 1990); Bagby v. Commissioner, 102 T.C. 596, 607 (1994). With respect to the addition to tax for negligence, petitioner argues that he is not liable for that addition to tax because he relied on his accountant to prepare Statewide's return for 1986 (which resulted in his deficiency). The adjustment to petitioner's 1986 *145 tax return, unlike his 1982 through 1985 tax returns, involved a relatively small amount, composed of $ 3,770 in items attributable solely to the disallowance of Statewide's depreciation of petitioner's personal assets. Although in our review of petitioner's 1982 through 1985 taxable years we did not find that the depreciation items were fraudulent for purposes of the additional interest of section 6653(b)(2), we note that petitioner supplied the information to his accountant that resulted in the depreciation of his personal assets. Further, and more importantly, petitioner is considered responsible for the failure to timely file his 1986 return. It is not reasonable here for petitioner to hide behind his preparer or delegate his filing obligation to the preparer of his S corporation's return. See United States v. Boyle, 469 U.S. 241, 249-250 (1985). Under those circumstances, we find that petitioner is liable for the additions to tax under section 6653(a)(1)(A) and (B) for 1986. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the income tax deficiency.↩
1. Petitioner raised this issue on the eve of trial and presented no evidence in support of it at the trial. On brief, petitioner concedes that he is not entitled to income averaging for 1982.↩
2. Petitioner presented no evidence on this issue and conceded it on brief. It was petitioner's burden to prove his entitlement to the credits; thus respondent's determination is presumed correct and must be sustained.↩
3. Petitioner conceded on brief that the period for assessment for the years 1982 through 1986 had not expired at the time of the mailing of the notice of deficiency. In addition, respondent has shown by competent evidence that the assessment period had been properly extended for 1982 through 1984 and that the notice of deficiency was mailed less than 3 years from the filing of the 1985 and 1986 returns. Further, our finding of fraud for 1982 through 1985 would cause the period for assessment to remain open beyond the normal 3 years. See sec. 6501(c)(1).↩
4. Petitioner conceded on brief that he was estopped from denying that he filed a 1982 return that was "false as to a material matter", but he reserved the right to contest respondent's determination for fraud for 1982 and the other tax years.↩
5. The parties' stipulations of facts and exhibits are incorporated by this reference.↩
6. Petitioner also conceded on brief that he was not entitled to investment tax credits for the taxable years 1983, 1984, and 1985.↩